A. Raymond JONES and Mary Lou Jones, Husband and Wife, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16805.

United States Court of Appeals Fifth Circuit.

Sept. 22, 1958.

Robert J. Hobby, Wentworth T. Durant, Dallas, Tex., Durant & Hobby, Dallas, Tex., for petitioners.

Arthur I. Gould, Ralph Spritzer, I. Henry Kutz, Lee A. Jackson, Dept. of Justice, Washington, D. C., Herman T. Reiling, Acting Chief Counsel, I.R.S., Washington, D. C., Rollin H. Transue, Sp. Atty., I.R.S., Washington, D. C., Charles K. Rice, Asst. Atty. Gen., for respondent.

Before HUTCHESON, Chief Judge, and RIVES and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

The question upon which this petition for review of the decision of the Tax Court will be decided is whether that decision was clearly erroneous in its finding that a part of the deficiency for each of the years 1948 and 1949 was due to fraud with intent to evade tax.[1] The Tax

---

I. As provided in the Internal Revenue Code of 1939, 26 U.S.C.A., 1952 Ed., § 293(b):

"Fraud. If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d) (2)."

It will be helpful to copy § 291(a) of the same Code at this point:

"In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days

Court assessed the fraud penalty in addition to the 25 per cent penalty provided by § 291(a) of the same Code, as well as the 10 per cent penalty under § 294(d) (1) (A), and the 6 per cent penalty imposed by § 294(d) (2).[2]

A number of questions were dealt with by the Tax Court, but petitioner has appealed only the item of fraud penalty aggregating for the two years $64,937.84. The Commissioner brought out also that petitioner A. Raymond Jones (referred to hereafter as petitioner or taxpayer)

had entered a plea of nolo contendere to an indictment [3] charging willful failure to file an income tax return for each of the years, and that he had paid a total fine of $10,000.00.

The basis of the petition for review is petitioner's claim that there was no clear and convincing evidence before the Tax Court upon which to base a finding of fraud as defined by the statute. We set forth in the margin all of the Tax Court's finding relating to the charge of fraud [4]

with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612(d) (1)."

2. The Commissioner had assessed tax deficiencies for the two years of $141,111.92 with corresponding penalties, but the Tax Court reduced the amount of the tax deficiency and, therefore, of the penalties, its decision embracing the following items exclusive of the fraud penalties:

| Year | Tax Deficiency | Sec. 291(a) 25% Penalty for Failure to File Return | Sec. 294(d) (1) (A) —10% Penalty For Failure to Estimate Tax | Sec. 294(d) (2) —6% Penalty for Substantial Underestimate of Estimated Tax |
|---|---|---|---|---|
| 1948 | $ 49,701.79 | $12,425.45 | $— 0 — | $2,982.11 |
| 1949 | 80,173.88 | 20,043.47 | 8,017.39 | 4,810.43 |
| | $129,875.67 | $32,468.92 | $8,017.39 | $7,792.54 |

The fraud penalty assessed for 1948 was $24,850.90 and for 1949, $40,086.94.

———◆———

3. Under § 145(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 145(a).

4. "The petitioners, husband and wife, resided in Dallas, Texas, during the taxable years. They did not file any income tax returns for the years 1948, 1949, and 1950 or declarations of estimated tax for 1949 and 1950. They had filed income tax returns for every year from 1933 through 1947.

\* \* \* \* \*

"Raymond [Jones] had been engaged in business for himself since 1938. He was in the core drilling and grouting business and also operated a machine shop during the taxable years. \* \* \*

\* \* \* \* \*

"The accounting firm of W. O. Ligon and Company of Fort Worth filled in the income tax forms for the taxpayers for all the years 1938 through 1950. The forms for 1948 and 1949 were filled in at Raymond's request and were delivered to him as in previous years. \* \* \* *Raymond kept the forms for the taxable years in his possession until the agents investigating his income tax liability asked for them. Those returns had not been signed by either taxpayer.*

"Raymond entered a plea of nolo contendere to the indictment of having willfully failed to file income tax returns for 1948 and 1949.

"The petitioners have not shown that their failure to file income tax returns for

and these findings will serve as the statement of facts upon which our opinion will be based.

These findings, which alone represent the basis of the Tax Court's conclusion of fraud, show that in truth the only specific fact [5] which it used as the basis for this conclusion was the deliberate failure to file the two tax returns which were prepared for him by his accountant. There is no indication that the Tax Court disbelieved any of the statements of

Jones or found his testimony subject to discount because it conflicted with that of other witnesses. Under the decisions of the Supreme Court and of this Court, we do not think that such deliberate failure is enough.

In fact, the statutory scheme shows that Congress intended to deal with willful failure to file and with fraud in different ways. It defined the two separate defenses in separate statutes, Footnote 1 supra. In the landmark Spies [6] case the

each of the taxable years * * * [was] 'due to reasonable cause and not due to willful neglect.'

"A part of the deficiency for each of the years 1948 and 1949 was due to fraud with intent to evade tax. * * *

"The Commissioner has the burden of proving by clear and convincing evidence that a part of the deficiency for each year was due to fraud with intent to evade tax. The taxpayers were fully aware of their legal duty to file income tax returns for the years 1948, 1949 and 1950. The independent accounting firm which was employed by Raymond in connection with his business actually filled in an income tax form on behalf of the petitioners for each of those years and delivered those prepared documents to Raymond after the close of each of the taxable years in time to permit the taxpayers to sign and file those documents as their returns for the taxable years. *The taxpayers deliberately refrained from executing and filing those forms as their returns.* The documents prepared for the years 1948 and 1949, which were introduced into evidence, show substantial amounts of income for each of those years. The one prepared for 1950 showed a loss and no tax due. The evidence shows that the *reason for the failure to file the documents was that Raymond did not want to use his money or have it taken to pay the taxes which the returns* would show to be due, because he chose to use his money instead for other purposes, including the expansion of his business in some or all of the taxable years. Raymond borrowed $45,000 from a bank in April 1949, and stated in the application that $27,000 thereof was needed to pay his 1948 income taxes. The taxes shown on the prepared form amounted to approximately that amount but were never paid. *He made payment of $32,086 in 1948 and 1949 on a home which he was purchasing.*

"It is *thus* clear that the failure to file the returns for 1948 and 1949 was due to a fraudulent purpose. *The information shown on the prepared forms was necessary or at least would have been helpful to the Government in determining the tax. That information was deliberately withheld* to avoid the payment of tax, and known provisions of the law were unjustifiably disregarded with a fraudulent intent. The record as a whole sustains the Commissioner's burden of proving that a part of the deficiency for each of the years 1948 and 1949 was due to fraud with intent to evade tax.

   *      *      *      *      *

"The taxpayer did not file any income tax returns for 1948, 1949 and 1950 or declarations of estimated tax for 1949 and 1950. They made no current payments during those years. It has already been pointed out that the failure to file required returns for 1948, 1949 and 1950 was deliberate. * * * Raymond claimed that he intended to file the returns and pay the tax as soon as the Government paid him for work which he had done for it. *That would not be reasonable cause,* and furthermore, *he did not file the returns and pay the tax when the Government did pay him.* He entered a plea of nolo contendere to a criminal indictment for willfully failing to file returns. The record shows affirmatively that his failure to file the returns in question, which subjected him to the additions to the tax under sections 291(a), 294(d) (1) (A) and 294(d) (2), was due to willful neglect, or worse, and was not due to reasonable cause." [Emphasis added.]

5. We will discuss infra the intimations of the Tax Court which we have emphasized in the quotation from its decision.

6. Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418.

Supreme Court pointed out the difference in clear terms. And we have been doing the same thing over the years. Beginning with Hargrove [7] and coming down through Veino,[8] we have consistently held that "fraud implies bad faith, intentional wrongdoing and a sinister motive. It is never imputed or presumed and the courts should not sustain findings of fraud upon circumstances which at the most create only suspicion."[9]

In Goldberg v. Commissioner, 5 Cir., 1956, 239 F.2d 316, 321, we stated; "The fraud which the Commissioner was required to prove to sustain the penalty is actual and intentional wrongdoing with a specific intent to evade the tax. * * * It is never imputed or presumed, and findings of fraud should not be sustained upon circumstances which at most create only suspicion." And we repeated, in Eagle v. Commissioner, 5 Cir., 1957, 242 F.2d 635, 637, that the Commissioner carried the burden "to prove affirmatively by clear and convincing evidence actual and intentional wrongdoing on the part of the petitioner with a specific intent to evade the tax."

In quoting the Tax Court's decision, Footnote 4, supra, we emphasized several statements which the Tax Court seemed to indicate might furnish support for the conclusion of fraud and which were seized upon by the Commissioner and argued before us as an adequate showing of fraud to warrant the fifty per cent penalties. First, consider the statement in the Tax Court's opinion: "Raymond kept the forms for the taxable years in his possession until the agents investigating his income tax liability asked for them. These returns had not been signed by either taxpayer. * * * The taxpayer deliberately refrained from executing and filing those forms as their return. * * * The information shown on the prepared forms was necessary or at least would have been helpful to the Government in determining the tax. * * *" This statement is significant in that it shows that the Tax Court did not find that Jones employed evasive tactics when asked for his tax returns, but that it accepted the fact that he did turn them over to the revenue agents upon their request. The evidence shows beyond dispute also that his books were made readily available to them.

The quoted statement shows merely that the taxpayer deliberately held the documents and did not file them. He had been told by his auditors that this would subject him to penalty under § 291(a). That the information would have been helpful to the Government does not tend to sustain the charge that the taxpayer failed to file the prepared returns with a fraudulent intent, and no support for such a conclusion is found in the authorities.

The Tax Court's finding that the petitioner did not show that his failure to file these returns was "due to reasonable cause and not due to willful neglect," equally fails to furnish support for a fraud charge. Those words are taken direct from § 291(a) and serve only to justify the infliction of the penalties of that section upon petitioner. Petitioner does not appeal from the twenty-five per cent penalties levied under that statute. The words do not have any tendency to supply a connotation of fraud.

The Tax Court found that "the evidence shows that the reason for the failure to file the documents was that Raymond did not want to use his money or have it taken to pay the taxes * * * because he chose to use his money instead for other purposes, including the expansion of his business. * * * He made payments of $32,086.00 in 1948 and 1949 on a home which he was purchasing." The Commissioner, in his presentation before us, dwells upon these findings as if they convicted petitioners of patent

7. Hargrove v. United States, 5 Cir., 1933, 67 F.2d 820, 90 A.L.R. 1276.

8. Veino v. Fahs, 5 Cir., 1958, 257 F.2d 364.

9. Olinger v. Commissioner, 5 Cir., 1956, 234 F.2d 823, 824.

perfidy and intentional wrongdoing. Leaving aside the fact that the house had been purchased before the first tax return was due and that the payments had to be made to avoid its sacrifice, the argument is utterly lacking in force that a citizen can be convicted of intentional wrongdoing with specific intent to evade his taxes because he elects to use his money, much of it borrowed, for pressing business needs,—"giving the squeaking wheel the grease," as petitioner expresses it, i. e., to save his business and his home in preference to turning it over to the Government even though he knows he owes taxes.

Of course, the taxpayer claims that he was cramped financially because of the failure of the Government to pay him a claim of $663,000.00 due since 1944, under which, ten years later, he did receive through the Court of Claims $339,000.00. We do not have to hold that he had the right to omit filing his tax returns and paying his income tax because the Government failed to pay money due him, in order to view with understanding the undisputed proof of what was going through the mind of petitioner at the time he omitted the filing of these two tax returns. At all events, there is nothing in this situation which gives any substance to a charge of fraud.[10]

We have gone into the charges of fraud in some detail to demonstrate that, if every finding of fact by the Tax Court is accepted as true, there is no evidence of fraud upon which the conclusion of the Tax Court can rest; and respondent fur-

nishes no law to support his contention. Respondent relies chiefly on the recent Ninth Circuit case of Powell v. Grandquist, 1958, 252 F.2d 56, affirming the decision of the District Court of Oregon reported in 146 F.Supp. 308. We are not called upon to decide whether we would follow that case as respondent interprets it, because it is clearly distinguishable on the facts. In addition to the deliberate and defiant refusal to file his tax returns because he did not like the way the Government was being run, Powell kept no formal books, did not cooperate with the agents when they were checking such records as he had, and withheld from them information concerning real estate transactions.[11] Nothing resembling those facts is present here where there is no evidence of concealment, of misrepresentation, of subterfuge. The result announced in that case is not unlike that reached by us in Veino, supra, where the District Court made findings of fact sufficient to support fraud independent of the mere willful failure to file tax returns.

We think that the record in this case shows that petitioner has satisfied the full penalty of the law; in fact, has, by acquiescing in fines and exactions totaling $58,278.85, paid rather dearly for whatever obliquity may properly be ascribed to him here. The judgment of the Tax Court as to both petitioners is reversed insofar as it includes the fifty per cent fraud penalties provided by § 293(b), and the cause is remanded for further proceedings in consonance with this opinion.

Reversed and remanded.

10. The Commissioner carries the argument still further claiming that it was evidence of fraud that Jones did not immediately pay his tax when he did receive, in 1954, payment of the ten year old debt. This argument leaves out of view the undisputed proof that, before receipt of this money, he had been indicted, had paid a fine of $10,000.00, and been placed under suspended jail sentence, these deficiency assessments had been made against him and this legal proceeding was in progress. The evidence also further shows that he made an offer in compromise which was not accepted.

11. "* * * and revenue agents were able to uncover in excess of thirty real estate transactions made by Powell in his own right, by ferreting out the public records." 252 F.2d 59.