T.C. Memo. 2005-140

UNITED STATES TAX COURT

RANDON J. SCHOLET, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4879-03.                    Filed June 15, 2005.

<u>R. Lawrence Heinkel</u>, for petitioner.

<u>Michael D. Zima</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined a deficiency of
$463,386 in petitioner's Federal income tax for 1998 and
additions to tax under section 6651(a)(1) for failure to timely
file of $112,138 and under section 6654(a) for failure to pay
estimated tax of $20,449.58.

After concessions, the issues for decision are:

1.  Whether the notice of deficiency was arbitrary.  We hold that it was not.

2.  Whether petitioner's capital gain from the sale of stock in 1998 was $408,092.98.  We hold that it was.

3.  Whether petitioner may carry forward to 1998 a capital loss from 1997.  We hold that he may not.

4.  Whether petitioner may deduct charitable contributions of $2,141 for 1998.  We hold that he may not.

5.  Whether petitioner's filing status is married filing separately for 1998.  We hold that it is.

6.  Whether petitioner is liable for additions to tax for failure to timely file his 1998 income tax return under section 6651(a)(1)[1] and for failure to pay estimated tax under section 6654(a) for 1998.  We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.  Petitioner

Petitioner lived in Clearwater, Florida, when he filed his petition.  Petitioner was married throughout 1998.  Petitioner has a bachelor's degree in computer science and mathematics.  In 1998, petitioner earned wages from IBM of $99,739.  Petitioner

---

[1] Section references are to the Internal Revenue Code in effect for the year in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

took an income tax return preparation course at H & R Block at a time not specified in the record.

B.    Petitioner's Stock Sales in 1998

    1.    Petitioner's IBM Stock Transactions

        a.    Purchases of IBM Stock

Petitioner participated in the IBM Employees Stock Purchase Plan (ESPP) from July 13, 1979, through August 31, 1995. He typically bought shares of IBM stock each quarter at a price of 10-15 percent below the market price and withdrew the stock certificates from the plan. Petitioner's bases in certain shares of IBM stock were as follows:

| Stock certificate No. | No. of shares | Cost basis |
| --- | --- | --- |
| 479321 | 4 | $214.22 |
| 711752 | 1 | 54.82 |
| 184316 | 1 | 71.09 |
| 331109 | 3 | 291.14 |
| 492586 | 3 | 290.87 |
| 687965 | 14 | 1,577.33 |
| 246717 | 11 | 1,421.24 |
| 674021 | 23 | 2,622.38 |
| 41127 | 38 | 4,605.45 |
| 370058 | 7 | 891.63 |
| 695343 | 50 | 4,939.29 |
| 529572 | 57 | 5,340.54 |
| 895652 | 65 | 5,975.89 |
| 431763 | 46 | 4,220.50 |
| 431764 | 1 | 91.75 |
| Total | 324 | 32,608.14 |

Petitioner also acquired 335 shares of IBM stock under an IBM Investor Services Program (the program). Petitioner made quarterly purchases of IBM stock under that program. From March 13, 1980, to January 27, 1992, he bought 46.541 shares of IBM

stock through the program for a total cost of $5,130.94. On January 27, 1992, petitioner sold .541 shares of IBM stock held through the program.

On May 27, 1997, the IBM stock in the program split, and 46 shares of petitioner's IBM stock became 325 shares. Petitioner bought an additional 10.895 shares through the program for a total cost of $1,090.43. After selling .895 shares, petitioner had 335 shares of IBM stock (represented by stock certificate No. 156716) for which he had a basis of $6,133.78 ($6,221.37 paid minus $87.59 basis in the .541 and .895 shares sold).

Petitioner maintained an investment account at Charles Schwab & Co. (Schwab account). On August 1, 1997, petitioner held 110 shares of IBM stock in that account. Petitioner's basis in those shares is not in the record.

Petitioner bought IBM stock in 1997 and 1998 as follows:

| Date | No. of shares | Total price |
|---|---|---|
| 9/11/97 | [1].2275 | $22.00 |
| 10/28/97 | 100 | 8,944.00 |
| 12/10/97 | [1].2145 | 22.05 |
| 1/12/98 | 100 | 9,831.50 |
| 1/12/98 | 100 | 9,844.00 |
| 2/xx/98 | 100 | 10,229.95 |
| 3/11/98 | [1].6311 | 62.09 |
| 6/11/98 | [1]1.1112 | 130.70 |
| 6/11/98 | 500 | 58,529.95 |
| 6/16/98 | 500 | 55,967.45 |
| 9/11/98 | [1]1.6355 | 204.64 |

[1] Petitioner acquired these shares with reinvested dividends.

The following shares of IBM stock were transferred to petitioner's Schwab account:

| Date | No. of shares |
|------|---------------|
| 4/9/98 | 324 |
| 4/17/98 | 133 |
| 4/17/98 | 26 |
| 5/18/98 | 335 |

Petitioner's 324 shares of IBM stock transferred to his Schwab account on April 9, 1998, were purchased through the ESPP. His basis in those 324 shares was $32,608.14. The record does not indicate petitioner's basis in the 159 shares (133 shares + 26 shares) of IBM stock transferred to his Schwab account on April 17, 1998. Petitioner's 335 shares of IBM stock received by his Schwab account on May 18, 1998, were those he had acquired under the IBM investors program and for which he had a basis of $6,133.78.

b. Sales of IBM Stock

Petitioner sold shares of IBM stock held in his Schwab account in 1997 and 1998 as follows:

| Date | No. of shares | Proceeds |
|------|---------------|----------|
| 11/4/97 | 100 | $10,124.41 |
| 4/21/98 | 300 | 34,468.90 |
| 7/21/98 | 1,000 | 128,340.77 |
| 9/22/98 | 300 | 38,781.25 |
| 10/12/98 | 600 | 78,042.44 |

2. <u>Petitioner's Merck Stock Transactions</u>

a. <u>Purchases of Merck Stock</u>

On August 1, 1997, petitioner held 1,276.4571 shares of Merck stock in his Schwab account. The record contains no information from which to compute petitioner's basis in that stock. Petitioner bought additional shares of Merck stock in 1997 and 1998 as follows:

| Date | No. of shares | Total price |
|------|---------------|-------------|
| 8/15/97 | 50 | $4,701.88 |
| 10/2/97 | [1]5.9803 | 596.91 |
| 10/31/97 | 100 | 8,244.00 |
| 1/5/98 | [1]6.0173 | 644.60 |
| 2/xx/98 | 100 | 12,911.20 |
| 2/26/98 | 100 | 12,679.95 |
| 3/6/98 | 80 | 9,979.75 |
| 4/2/98 | [1]5.305 | 692.30 |
| 4/16/98 | 300 | 36,329.95 |
| 4/27/98 | 500 | 57,467.45 |
| 6/16/98 | 500 | 62,029.95 |
| 7/2/98 | [1]14.271 | 1,900.69 |
| 7/22/98 | 300 | 38,279.95 |
| 7/23/98 | 300 | 37,229.95 |
| 8/4/98 | 400 | 48,029.95 |
| 10/2/98 | [1]5.7624 | 711.20 |

[1] Petitioner acquired these shares with reinvested dividends.

On April 9, 1998, 1,800 shares of Merck stock were transferred to petitioner's Schwab account. Petitioner's basis in that stock is not in the record.

b.    Sales of Merck Stock

On January 20, 1998, petitioner sold 100 shares of Merck stock for $110.625 per share.  His net proceeds were $11,032.18. These shares were part of the 1,276.4571 shares he held on August 1, 1997, for which the record contains no evidence of his basis. After the sale, petitioner had 1,176.4571 shares of Merck stock with a basis not established in the record and a total of 1,338.4547 shares of Merck stock.

Petitioner sold other shares of Merck stock in 1998 as follows:

| Date | No. of shares | Proceeds |
|------|---------------|----------|
| 6/10/98 | 800 | $100,766.69 |
| 7/1/98 | 2,000 | 261,931.26 |
| 8/6/98 | 175 | 21,263.97 |
| 8/7/98 | 655 | 80,400.48 |
| 8/12/98 | 391 | 48,080.65 |
| 8/17/98 | 400 | 51,968.31 |
| 9/15/98 | 500 | 67,780.28 |
| 10/12/98 | 600 | 79,317.40 |

3.    Other Sales of Stock

Petitioner received the following amounts from the sale of stocks or bonds in 1998:  $35 from the Vanguard Group, Inc. (Vanguard); $104 from the First Chicago Trust Co. of New York (First Chicago); $1,099,313 from Schwab; and $1,074 from Schwab (separate from the amount described above).

Petitioner had the following amounts of capital gains on sales of certain stocks in 1998:

| Stock | Amount realized |
|---|---|
| Ascend Communications, Inc. | $2,020.96 |
| Apple Computer Co. | 1,000.93 |
| Medical Manager Corp. | 799.16 |
| Excel Communications | 916.69 |
| Vitesse Semiconductor | 2,439.70 |

Petitioner had capital losses in 1998 of $23,990.08 on the sale of Ucarb International, Inc. stock, and of $60,577.93 on the sale of Boston Chicken, Inc. stock.

Petitioner received cash of $32.15 in lieu of stock in Cisco, Inc., in 1998.

Petitioner had net capital losses of $77,358.42 in 1998 from sales or other disposition of stocks other than IBM and Merck. He had net capital gain of $408,092.98 in 1998.

## C. Petitioner's Dividends and Interest in 1998

Petitioner had dividends of $6,632 and interest of $149 in 1998.

## D. Petitioner's Failure To File a 1998 Tax Return

Petitioner filed income tax returns for 1979 through 1997. He claimed a $15,547 net operating loss carryover on Schedule D, Capital Gains and Losses, attached to his 1997 return, but he did not state from which year or years he was carrying the loss. He did not file an income tax return for 1998.

On April 15, 1999, petitioner mailed a letter to the Internal Revenue Service (IRS), stating that he and his wife were seeking legal advice as to whether they were required to file a

return for 1998. On May 25, 1999, petitioner wrote to the IRS, stating that he and his wife "have chosen to follow the instructions in your 1040 Booklet and file our annual <u>response</u> in the form of a statement in accordance with the new Privacy Act Notice for 1998." They stated that they were not filing a tax return for 1998 because: "We still sincerely believe that we are not a person liable or required to file a 1040 U.S. Individual Income Tax Return for 1998."

Federal income tax of $14,833 was withheld from petitioner's wages in 1998. Petitioner paid home mortgage interest of $9,342.20, real estate taxes of $4,168.74, and investment interest of $25,582 in 1998.

In the notice of deficiency, respondent determined that petitioner had capital gain of $1,100,526, consisting of $35 from Vanguard, $104 from First Chicago, $1,099,313 from Schwab, and an additional $1,074 from Schwab. Respondent determined that petitioner's gain on the sale of stocks was equal to the net sale price of those stocks.

E.    Posttrial Procedures

At trial, petitioner lacked substantiation of his bases in some of his IBM and Merck stock. Respondent agreed to our holding the record open for 90 days to receive a supplemental stipulation from the parties relating to petitioner's bases in certain IBM and Merck stock, the amount of petitioner's

charitable contributions, and the capital loss carryforward issue. The Court later granted both parties' motions to hold the record open. The record was held open 4 more weeks, during which time the parties filed a supplemental stipulation of facts.

OPINION

A.   Whether the Notice of Deficiency Was Arbitrary

Petitioner contends[2] that the notice of deficiency was arbitrary. We disagree. Respondent's determination of the amount of petitioner's capital gain was based on the amounts of petitioner's proceeds from sales of capital assets in 1998 as reported to respondent on Forms 1099-B, Proceeds From Broker and Barter Exchange Transactions. Petitioner does not dispute those amounts. Petitioner failed to file a tax return for 1998 and thus failed to report the capital transactions at issue. It was not arbitrary for respondent to determine a deficiency based on sale prices under these circumstances.

---

[2] At trial, we ordered the parties to file posttrial briefs. Respondent complied with this order; petitioner did not. Under these circumstances, we may default petitioner on all issues for which he bears the burden of proof. See Stringer v. Commissioner, 84 T.C. 693, 704-708 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986); Furniss v. Commissioner, T.C. Memo. 2001-137; McGee v. Commissioner, T.C. Memo. 2000-308; Pace v. Commissioner, T.C. Memo. 2000-300; Hartman v. Commissioner, T.C. Memo. 1999-176. However, we decide this case on the record as it stands. Our understanding of petitioner's position is based on his petition, opening statement, and trial testimony.

Respondent's determination is presumed to be correct, and petitioner bears the burden of proof.[3]  See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

B.    <u>Whether Petitioner's Capital Gain From the Sale of Stock in 1998 Was $408,092.98</u>

Respondent determined that petitioner had capital gain of $1,100,526 from the sale of stock in 1998, but now contends that he had capital gain of $408,092.98.  Respondent concedes that petitioner had capital losses of $77,358.42 in 1998 and that he had substantial bases in his IBM and Merck stock, instead of zero as determined in the notice of deficiency.  Petitioner did not establish his basis in the first 10 shares of IBM stock he sold in 1998 or in the 159 shares of IBM stock transferred to his Schwab account on April 17, 1998.  Similarly, petitioner did not prove his basis in the 1,276.4571 shares of Merck stock held in his Schwab account on August 1, 1997, or in the 1,800 shares of Merck stock transferred to his Schwab account on April 9, 1998.  Petitioner does not dispute respondent's calculation of gain on his sales of IBM and Merck stock.  Thus, we hold that petitioner had capital gain of $408,092.98 in 1998.

---

[3] Petitioner bears the burden of proof on the basis, capital loss carryforward, charitable contributions, and filing status issues.  See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  The burden of proof for a factual issue may shift to the Commissioner under certain circumstances.  Sec. 7491(a).  Petitioner does not contend that sec. 7491(a) applies in this case.

C.   Whether Petitioner May Carry Forward a Capital Loss From 1997 to 1998

Petitioner contends that he may carry forward to 1998 a $15,547 capital loss from 1997.  We disagree.

Petitioner reported on his 1997 return that he had a $15,547 net operating loss carryover.  He did not identify on the return or testify about the year or years from which he was carrying that loss.  To carry forward or carry back net operating losses, the taxpayer must prove the amount of the net operating loss carryforward or carryback and that his or her gross income in other years did not offset that loss.  Sec. 172(c); Jones v. Commissioner, 25 T.C. 1100, 1104 (1956), revd. and remanded on other grounds 259 F.2d 300 (5th Cir. 1958).  A tax return is not evidence of the truth of the facts stated in it.  Lawinger v. Commissioner, 103 T.C. 428, 438 (1994); Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974).  Petitioner did not establish the amount of his 1997 net operating loss or that his income in the carryback years before 1997 did not fully offset any net operating loss.

We conclude that petitioner may not carry forward a net operating loss from 1997 to 1998.

D.    Whether Petitioner May Deduct Charitable Contributions for 1998

Petitioner contends that he may deduct charitable contributions of $2,141 for 1998.  More specifically, petitioner testified that he made weekly donations of $20 to a church, that his wife made similar weekly contributions, and that his son and daughter each made weekly contributions of $1.

Respondent contends that he may not deduct any of those amounts.  We agree because petitioner has not substantiated the contributions as required.  See sec. 170(a)(1) (taxpayer must verify claimed contribution under regulations prescribed by the Secretary).  The Court gave petitioner every opportunity at trial to offer evidence of his contributions and held the record open for 4 months to receive evidence, but he provided no evidence of them.  Petitioner did not identify the church to which contributions were made.  See id.  Under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), we may estimate the amount of a deductible expense if a taxpayer establishes that he or she paid the expense but cannot substantiate the precise amount. Petitioner's uncorroborated testimony is the only evidence supporting his claim.  He did not give us an adequate basis to estimate the amount of his contributions under Cohan.  More than half of the charitable contributions petitioner claims were attributable to family members and thus are not deductible by

petitioner.  We conclude that petitioner may not deduct any of these claimed contributions for 1998.

E.    Whether Petitioner's Filing Status Was Married Filing Separately for 1998

Respondent determined petitioner's filing status to be married filing separately.  Petitioner was married throughout 1998.  He did not file a return for 1998, joint or otherwise.  To elect the benefit of the joint return rates, taxpayers must file a joint return.  Thompson v. Commissioner, 78 T.C. 558, 561 (1982).  Thus, petitioner's filing status for 1998 is married filing separately.  Sec. 1(d).

F.    Whether Petitioner Is Liable for Additions to Tax

    1.    Burden of Production

In court proceedings arising in connection with examinations beginning after July 22, 1998, section 7491(c) places on the Commissioner the burden of producing evidence that it is appropriate to impose the addition to tax under section 6651(a)(1).  Petitioner did not file an income tax return for 1998, even though he had wages from IBM, interest and dividend income, and capital gains from sales of stock in 1998.  Federal income tax of $14,833 was withheld from petitioner's wages in 1998.  However, petitioner made no payments of estimated tax relating to the interest, dividends, and capital gain income he received in 1998.  Respondent has met the burden of production under section 7491(c) as to the additions to tax under section

6651(a) for failure to file and under section 6654 for failure to pay estimated tax for 1998.

2.    Failure To File Under Section 6651(a)(1)

A taxpayer is liable for an addition to tax of up to 25 percent for failure to file a Federal income tax return unless the failure was due to reasonable cause and not willful neglect. Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985).

Petitioner contends that the statement he and his wife submitted to the IRS satisfies his obligation to file a return or other statement under the Code.  We disagree.  Petitioner's statement was not made in accordance with the forms and regulations prescribed by the Secretary as required by section 6011(a) and did not include the dollar amounts or any other information needed to determine tax liability.  See Beard v. Commissioner, 82 T.C. 766, 777 (1984), affd. 793 F.2d 139 (6th Cir. 1986).

Petitioner was well aware of his responsibility to file returns as evidenced by his timely filing of returns for 1979 through 1997.  His claim that the filing of an income tax return is voluntary is frivolous.  Petitioner wrote to the IRS stating his belief that filing a return is voluntary and purporting to give the IRS 30 days to refute his conclusion or he would proceed accordingly.  Petitioner's claim that the IRS is collaterally

estopped, by its failure to respond within 30 days to his letter, from arguing that he is liable for income tax is also frivolous and does not excuse his failure to file his 1998 return. We conclude that petitioner is liable for the addition to tax under section 6651(a) for failure to file for 1998.

3. Failure To Pay Estimated Tax Under Section 6654(a)

Respondent determined that petitioner is liable for the addition to tax under section 6654(a) for failure to pay estimated tax for 1998. We have jurisdiction to review this determination because petitioner did not file a return for 1998. Sec. 6665(b)(2); Meyer v. Commissioner, 97 T.C. 555, 562 (1991).

To be liable for the addition to tax under section 6654, a taxpayer must have underpaid or failed to pay estimated tax for the year in issue. Sec. 6654(a). A taxpayer is liable for the addition to tax for failure to pay estimated tax unless he or she meets one of the exceptions provided in section 6654(e), none of which applies here.

Petitioner alleged in the petition that all of respondent's adjustments were wrong, but he offered no evidence and made no argument directed specifically to his liability for the section 6654 addition to tax. We conclude that petitioner is liable for

the addition to tax under section 6654 for failure to pay estimated tax for 1998.

To reflect concessions and the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.